Neftali Paduani #1048464
Name and Inmate Booking Number
Lovelock Correctional Center
~~[redacted]~~
Place of Confinement

~~[redacted]~~ 1200 Prison Road
Mailing Address
Lovelock    89419
~~[redacted]~~ NV ~~[redacted]~~
City, State, Zip Code

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Neftali Paduani,
                                    Plaintiff,

vs.

(1) Calvin Johnson et al,

(2) _____,

(3) _____,

(4) _____,

(5) _____,
                                    Defendant(s).

See page 2 for full list of Defendants

Case No. _____
(To be supplied by Clerk of Court)

**CIVIL RIGHTS COMPLAINT BY AN INMATE**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

☒ Jury Trial Demanded

### A. JURISDICTION

1) This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a)(3); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)
   ☐ Other: _____

2) Institution/city where Plaintiff currently resides: Lovelock Correctional Center Lovelock NV

3) Institution/city where violation(s) occurred: High Desert State Prison Indian Springs NV

B. DEFENDANTS

1. Calvin Johnson (Hereinafter "Johnson") Former HDSP Warden
2. Brian Williams SR (Hereinafter "Williams SR") HDSP Warden
3. Charles Daniels (Hereinafter "Daniels") Former NDOC Director
4. Harold Wickham (Hereinafter "Wickham") NDOC Deputy Director
5. James Scally (Hereinafter "Scally") HDSP Associate Warden
6. Jeremy Bean (Hereinafter "Bean") HDSP Associate Warden
7. Julie Williams (Hereinafter "J.Williams") HDSP Associate Warden
8. Ronald Oliver (Hereinafter "Oliver") HDSP Associate Warden
9. Steve Sisolak (Hereinafter "Sisolak") Former President BPC
10. Joseph Lombardo ("Hereinafter "Lombardo") President BPC

The following Defendants are or were employed by Nevada Department of Corrections ("Hereinafter "NDOC") whose buisness address is 3955 W. Russell Rd Las Vegas NV 89118 defendants 1,2,3,4,5,6,7,8.

The following defendants are or were members of Nevada Board of Prison Commissioners (Hereinafter "BPC") whose buisness address is 100 North Street, Carson City NV 89701-4717 defendants 9 and 10

All Defendants named in this action are sued in both there individual and official capacities.

## C. NATURE OF CASE

1. This civil rights action addresses unconstitutionally deficient access to outdoor exercise, in violation of 9th Circuit precedent and is analyzed under US Const Amend VIII

2. This complaint seeks compensatory, exemplary, injunctive and declatory relief

### D.   CAUSE(S) OF ACTION

### CLAIM 1

1. State the constitutional or other federal civil right that was violated: <u>Conditions of Confinement under Const Amend VIII</u>

2. **Claim 1.** Identify the issue involved. Check only one. State additional issues in separate claims.

   ☐ Basic necessities          ☐ Medical care             ☐ Mail
   ☐ Disciplinary proceedings   ☐ Exercise of religion     ☐ Property
   ☐ Access to the court        ☐ Excessive force by officer  ☐ Retaliation
   ☐ Threat to safety           ☒ Other: <u>Conditions of Confinement, outdoor exercise.</u>

3. Date(s) or date range of when the violation occurred: <u>7-2021 to Present Date</u>.

4. **Supporting Facts:** State as briefly as possible the FACTS supporting Claim 1. Describe exactly what each specific defendant (by name) did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

3. Williams SR, Johnson, Daniels, Wickham, Scally, Bean, J.Williams, Oliver, Lombardo, and Sisolak are subject to liability to Plaintiff for the constitutional tort of Deliberate indifference for failing to provide regular and adequate outdoor exercise, in violation of clearly-established federal precedent

4. Defendant Lombardo is being sued in his official capacity as president of the BPC. All other defendants are being sued in their individual and official capacities

5. Plaintiff asserts ongoing tort-doctrine, meaning that from 7-2021 and everyday after until matter is resolved, defendants are subject to liability for the ongoing tort.

6. Plaintiff has been incarcerated at High Desert State Prison ("HDSP") in protective segregation unit ("PSU") since July 2021. Plaintiff has been housed in unit 9 of the PSU, the least restrictive housing unit in the PSU since July 2021. Plaintiff is in HDSP as a post conviction detainee at all times relevant to this action and specifically from July 2021 to the present date. The cells in HDSP's PSU are double occupancy and measure approximately sixty square feet, SEE Henrickson v. State, 2021 U.S. Dist. Lexis 54485 at page 3

7. On or about March 18, 2020 Defendants Johnson, Scally, Bean and Oliver implemented a "Modified Programs Operations" (MPO) Schedule in Response to the Covid 19 global Pandemic.

8. MPO is an imprecise term and Defendants created no known written policies governing MPO. While schedules for inmate access to outdoor exercise were occassionally released These schedules were aspirational and never realized, as noted infra.

9. MPO Could, and in Fact did consist of 20-24 Hours per day of forced Cell confinement ("lockdown") lasting almost two years. As of The present date, defendants have still not returned HDSP Operations to the amount of outdoor exercise available pre-pandemic

10. Based upon information and belief, under MPO all inmate direct access to Law Library, education and Religious services was prohibited for in excess of eighteen months.

11. Based upon information and belief, under MPO all outdoor exercise was banned from March 18, 2020 untill August 2020.

12. Between August 2020 and Febuary 2022 based upon information and belief, Plaintiff Recieved less than twenty total hours of outdoor exercise amounting to less than 0.5 hours of outdoor exercise per week.

13. Based upon information and belief defendants Johnson, Scally, Bean, J.Williams and Oliver placed HDSP on total lockdown from January 7, 2022 through Febuary 3, 2022

14. During this time, Plaintiff was denied all access to outdoor exercise, plaintiff was allowed out of his cell no more than once every Three(3) Days for 30 Thirty minuets in order to shower and two days per week to work plaintiffs assigned Job in Prison Industries

15. In September and October 2022 Defendants. Williams SR, Scally bean, Oliver, J. Williams and daniels, based on information and belief

placed HDSP's PSU on Lockdown for all or nearly all of those months

16. On or about August 31, 2022 construction began on interior fencing designed to isolate HDSP outdoor exercise yards from their surrounding housing units. Construction concluded on or about December 8, 2022. Plaintiff was denied outdoor exercise for the duration.

17. From the beginning of MPO on March 18, 2020 to the present date, Plaintiff has received a total of approximately 160 hours of outdoor exercise access, an average of less than one (1) hour per week for a period spanning in excess of three (3) years.

18. Defendants Johnson, Williams Sr., Daniels, Wickham, Scally, Bean, J. Williams, and Oliver have all participated in the creation and/or perpetuation of de facto policies, customs and practices under the aegis of MPO that resulted in excessive and prolonged lockdowns causing the unconstitutional denial of Plaintiff's access to adequate outdoor exercise.

19. Defendants Johnson, Williams Sr., Daniels, Wickham, Scally, Bean, J. Williams and Oliver are or were HDSP administrators. Collectively, they are or were policymakers who create(d), draft(ed), implement(ed) and submit(ted) for approval both policies at HDSP and policies of the Board of Prison Commissioners ("BPC"). BPC policies include Administrative Regulations ("ARs") and Operational Procedures ("OPs").

20. These same Defendants did not or have not create(d), draft(ed), implement(ed) or submit(ted) ANY policies, regulations or procedures relative to the MPO to ensure Plaintiff's right to adequate outdoor exercise under U.S. Const. Amend. VIII was safeguarded or even considered.

21. Pursuant to Nevada Revised Statutes ("NRS") 209.101(2) and (3), Defendant Sisolak was, respectively, the head of the NDOC and President of the BPC. Defendant Sisolak was thus the person ultimately possessing authority and responsibility for the operation/oversight of the NDOC and BPC.

22. Upon becoming Governor of Nevada, Defendant Lombardo succeeded Defendant Sisolak in these roles.

23. Defendants Sisolak, and in turn Lombardo, were/are directly responsible for creating, establishing, approving and/or implementing policies for the NDOC that meet constitutional minimums.

24. Per the Nevada Attorney General's Office, the BPC acts as a check on the management of the NDOC. See A.G.'s Opinion 96-24, dated September 5, 1996.

25. Based upon information and belief, Defendant Scally is the Associate Warden assigned to supervise HDSP's PSU, where Plaintiff has been, and is, housed.

26. Based upon information and belief, pursuant to N.R.S. 209.131(6), Defendants Johnson, Williams Sr., Daniels, Sisolak and Lombardo, as members of the BPC, were responsible for approving regulations such as those governing inmate access to outdoor exercise.

27. The Defendants named in this action were placed on notice of their unconstitutional conduct in a variety of ways: via multiple injunctions issued by United States District Judges, via service of multiple civil rights actions, and in person at a meeting of the Nevada BPC, as well as multiple inmate grievances.

28. In Henrickson v. State (U.S. District Court 2:20-cv-01014-APG-EJY) U.S. District Court Judge Andrew P. Gordon issued an injunction against HDSP administrators (who are Defendants in this action) regarding constitutionally deficient access to outdoor exercise. See Henrickson ECF No. 87.

29. In Ross v. Johnson et.al. (U.S. District Court 2:22-cv-00259-CDS-VCF), U.S. District Court Judge Cristina D. Silva issued not only an injunction, but ordered several Defendants to appear in court and explain their failure to follow it. Judge Silva subsequently renewed the injunction. See Ross, ECF Nos 44 and 90.

30. Defendants Johnson, Williams Sr., Daniels, Wickham, Scally, Bean, J. Williams, Oliver and Sisolak, were put on notice of their tortious conduct via multiple federal civil rights actions including:
1. Henrickson, supra
2. Ross, supra
3. Johnson v. Williams, et al.; 2:20-cv-01835-RFB-DJA
4. Paulo v. Williams, et al.; 2:19-cv-00474-APG-NJK
5. Cardenas-Ornelas v. Wickham, et al.; 2:21-cv-00030-ART-VCF

31. Based upon information and belief, it is customary

practice within the NDOC for named defendants to receive copies of civil complaints, screening orders, injunctions, etc. Therefore Defendants were, in multiple instances, put on notice of their unconstitutional conduct.

32. As all of the Defendants named in this action are also named as Defendants in Ross, it is beyond dispute that they were/are aware of their unconstitutional conduct.

33. At a public meeting of the BPC, Ms. Jodi Hocking, who represents the prison reform advocacy group Return Strong presented Defendants Sisolak, Daniels, Wickham, and Williams Sr. with a report entitled "The Silenced Voices of the Incarcerated".

34. This report outlined, inter alia, the excessive lockdowns and denial of access to outdoor exercise at HDSP.

35. Hocking's reporting on this issue to the BPC is based upon information and belief as well as relevant BPC meeting minutes.

36. Defendants have also been made aware, with the exception of Defendants Lombardo and Sisolak, via multiple institutional grievances regarding the lack of access to outdoor exercise.

37. Based upon information and belief, institutional grievances regarding outdoor exercise have been filed by Jesse Ross, Trent Henrickson, Skyler Fowler, James Cushman, Anthony Prentice, Jerry E. Johnson, and Justin Paulo.

38. The lack of outdoor exercise at HDSP is severe and prolonged.

39. Defendants knew or reasonably should have known that the severe and prolonged denial of plaintiffs right to adequate outdoor exercise was directly attributable to and caused by, an MPO for which defendants created no known written policy, failed to remedy after they were made aware of the constitutional violation and/or failed to intervene and correct

40. Defendants belligerent contumacy to multiple Federal injunctions is indicative of there blatant, wanton and tortious indifference to plaintiffs 8th Ammendment Right to Adequate outdoor exercise.

41. Defendants were presented with multiple opportunities to remedy this violation. They chose not to

42. Plaintiff attempted to resolve the issue of inadequate outdoor exercise via HDSP's institutional grievance process beginning on 3-3-23 (grievance log # 2006-31-52326)

43. Plaintiffs First (informal level) grievance detailed the facts of the denial of outdoor exercise with specificity.

44. Plaintiff explained in that grievance how this denial rises to the level of constitutional affrontery as well as how plaintiff has been harmed by defendants unconstitutional deprivation of his Right to adequate outdoor exercise.

45. Based upon information and belief defendant Scally engaged in a strategy of clerical wack-a-mole in order to frustrate plaintiffs attempts at redress of grievances. Defendant Scally replied alleging some clerical insufficiency, Defendant Scally would Refuse to Respond or allege some other clerical insufficiency.

[struck through lines]

46. Plaintiff can only surmise that Prison Industries makes a profit off of inmate labor while outdoor exercise is a cost.

47. In addition to the harm of a constitutional rights violation, Plaintiff has suffered severe depression, feelings of abandonment, muscle atrophy, weight gain, suicidal ideations and hopelessness as a direct result of Defendants' tortious conduct.

48. Defendants instituted or maintained a de facto policy, custom or practice that resulted in regular, excessive, prolonged and unconstitutional denial of Plaintiff's right to adequate outdoor exercise. And Defendants knowingly, intentionally and with deliberate indifference maintained this de facto policy, custom or practice in the face of federal court injunctions, civil rights actions, public attention and inmate grievances.

49. Defendants' failure to create or modify policies such that Plaintiff's right to outdoor exercise in a constitutionally adequate amount was safeguarded constitutes deliberate indifference and is the direct, proximate and/or significantly contributing cause of Plaintiff's injuries.

50. Based upon information and belief, access to outdoor exercise in HDSP's PSU continues to be restricted in a manner violative of previous federal injunctions. Specifically, on 7/17/23 PSU Unit 9 housing officers announced there will be

1 no more afternoon yard. As four (4) of Unit 9's seven
2 (7) days in a week are scheduled for afternoon
3 yard, this results in a reduction in access
4 to outdoor exercise to a maximum of three
5 (3) hours per week.

E.  PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while incarcerated?   ☒ Yes   ☐ No

2. Has this Court or any other court designated you as subject to "three strikes" under 28 U.S.C. § 1915(g)?   ☐ Yes   ☒ No

3. If you have "three strikes" under 28 U.S.C. § 1915(g), does this complaint demonstrate that you are "under imminent danger of serious physical injury?"   ☐ Yes   ☒ No N/A

F.  REQUEST FOR RELIEF

I believe I am entitled to the following relief: Plaintiff Requests $1,500,000.00 in compensatory damages, $1,000,000.00 in exemplary damages, injunctive Relief that defendants be ordered to provide plaintiff 7 hours or more of weekly outdoor exercise, declaratory relief, that defendants pay plaintiffs costs and fees, and any and all relief the court deems as Furthering the interests of Justice or as Countering defendants repeated, systemic and intentional contumacy to previous court orders.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____
(name of person who prepared or helped prepare this complaint if not the plaintiff)

M. Paduani
(signature of plaintiff)

11-30-23
(date)

### ADDITIONAL PAGES

You must answer all questions concisely in the proper space on the form. Your complaint may not be more than 30 pages long. It is not necessary to attach exhibits or affidavits to the complaint or any amended complaint. Rather, the complaint or any amended complaint must sufficiently state the facts and claims without reference to exhibits or affidavits. If you need to file a complaint that is more than 30 pages long, you must file a motion seeking permission to exceed the page limit and explain the reasons that support the need to exceed 30 pages in length.

13 of 13